FIRST DIVISION
May 15, 2006

No. 1-03-1842

| | | |
|---|---|---|
| KENNETH HOOPER, Special Adm'r of the Estate of Louise Hooper, Deceased, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 98 L 8589 |
| THE COUNTY OF COOK and DEEPAK KAPOOR, | ) ) | |
| Defendants-Appellants | ) ) | |
| (Glenda Edmond-Nolla, | ) ) | Honorable Daniel J. Locallo, |
| Defendant). | ) | Judge Presiding. |

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

This appeal arises from a medical negligence action filed by plaintiff Kenneth Hooper, special administrator of the estate of his mother, Louise Hooper (Hooper), and against Cook County, Deepak Kapoor, M.D., a physician at Cook County Hospital, and Glenda Edmond-Nolla, R.N., a nurse at the hospital. Plaintiff alleged in his complaint that defendants were negligent in failing to treat and care properly for Hooper, who committed suicide while she was a patient at the hospital. The jury found in favor of Nolla and against Dr. Kapoor and Cook County, awarding $1,212,000 to plaintiff.

Plaintiff appealed the exclusion of Nolla from the jury's negligence findings and the

amount of the award but later withdrew that appeal. Defendants Cook County and Dr. Kapoor also appealed, raising a single claim: the trial court erred in its refusal to submit their special interrogatory to the jury. We agree and reverse and remand for a new trial as to Dr. Kapoor and Cook County.

We are asked to decide whether the foreseeability of a hospital patient's suicide was the dispositive jury question in this medical negligence case. Defendants claim that the jury had to believe Hooper's injury was foreseeable to find that defendants' conduct was the proximate cause of her death. Defendants argue the trial court committed reversible error in denying a special interrogatory to test the jury's position on the foreseeability of Hooper's injury. The special interrogatory proposed by defendants and denied by the court was: "Prior to the death of [Louise] Hooper, was it reasonably foreseeable that she would commit suicide or act in a self-destructive manner on or before December 6, 1997? Yes ___ No___."

The parties disagree on whether the foreseeability of Hooper's suicide was the ultimate fact on which the rights of the parties depended. See DiMarco v. City of Chicago, 278 Ill. App. 3d 318, 322, 662 N.E.2d 525 (1996) (a special interrogatory to a jury is proper when it concerns the ultimate fact on which the rights of the parties depend). Defendants claim that unless Hooper's suicide was foreseeable, their actions cannot be deemed the proximate cause of Hooper's death. Plaintiff argues that the foreseeability of Hooper's suicide was but one of the facts that had to be determined by the jury in deciding whether defendants' actions were the proximate cause of Hooper's death.

These pertinent facts emerged at trial. Hooper was admitted to Cook County Hospital on

December 2, 1997, for medical treatment unrelated to this case. At 2 a.m. on December 5, 1997, while Hooper was a patient in the intensive care unit (ICU), she developed symptoms of a form of delirium known as ICU psychosis. She became paranoid, combative and uncontrollable. Betty Shamley, a psychiatric nurse, examined Hooper and found her to have "paranoid ideation" as shown by Hooper's comments that people were trying to hurt her and invade her privacy. Shamley spoke by telephone to Dr. Kapoor, the attending psychiatrist. They developed a treatment plan that included administering the antipsychotic medication Haldol and transferring Hooper to Ward 24, a medical-surgical ward with a calmer atmosphere than the ICU. The plan called for placing Hooper on "one-to-one nursing p.r.n. for unpredictable behavior." There was testimony that "p.r.n." stands for "if necessary." An earlier order of "bed rest" was changed to "ambulatory," meaning Hooper was allowed to walk around in the ward. Dr. Kapoor did not talk to or examine Hooper.

In the evening of December 5, 1997, Hooper reported seeing green and purple lights and movement in the ceiling to a patient who shared her room. At 3:55 a.m. on December 6, 1997, Hooper was found in the bathroom by another patient. Hooper had hung herself by knotting her hospital gown. Although Hooper had a slight pulse, she was unresponsive and unconscious. She later died.

At trial, plaintiff's theory was Dr. Kapoor's failure to conduct a complete mental status examination of Hooper and his failure to order one-to-one nursing care for her caused or contributed to her injury and death. Defendants responded that a medical negligence claim cannot succeed where the defendant fails to guard against something that cannot be foreseen.

Defendants argued that because the medical experts could not identify the cause of Hooper's suicide even after her death, Hooper's suicide must have been unforeseeable. Dr. Alex John Spadoni, a physician specializing in psychiatry, testified as plaintiff's expert witness. He said that a person who was suffering from delirium or ICU psychosis would be at risk of causing harm to herself, including suicide. He opined that defendants' conduct was a contributing factor in Hooper's death. Dr. Carl Martin Wahlstrom, a forensic psychiatrist, testified as defendants' expert witness. He opined that Hooper's act of hanging herself was an intentional act, not an accident where she hurt herself because of delirium. Dr. Wahlstrom said Hooper's act involved "a substantial degree of planning." He answered "no," over plaintiff's objection, to defendants' question of whether "the suicide in this case was reasonably foreseeable."

Near the end of the trial, during the jury instruction conference outside the presence of the jury, defendants proposed a special interrogatory to the jury that was discussed by the judge and counsel for the parties:

"MR. DESIERTO [defense counsel]: Judge, we have also given counsel copies *** [of] some special interrogatories.

First one we're proposing is[:] prior to the death of *** Hooper was it reasonably foreseeable that she would commit suicide or act in a self-destructive manner on or before December 6th.

Judge, proximate cause is a question of fact and foreseeability is part of the proximate cause and yesterday *** you allowed the testimony of–

THE COURT: Sure.

1-03-1842

MR. DESIERTO: –Dr. Wahlstrom as to the foreseeability aspect of the act.

And therefore this is a question of fact that the jury has a right to consider.

MR. ROGERS, JR. [plaintiff's counsel]: Such a favorable finding on that question[,] though[,] wouldn't be inconsistent with a verdict for the plaintiff, your honor.

It has to challenge the entirety of proximate cause.

THE COURT: Anything else at this time?

MR. DESIERTO: No.

MR. ROGERS, SR. [plaintiff's counsel]: Doesn't address–the language doesn't address the suicide being unpredictable behavior.

THE COURT: All right. The Court will refuse as tendered."

Defendants' sole argument on appeal is that the trial court's refusal to tender their special interrogatory to the jury was an error that caused prejudice and denied defendants a fair trial. Defendants contend that "[i]f the jury had determined as a matter of fact that Hooper's suicide was not reasonably foreseeable, then the court would have had to enter judgment in favor of the defendants *** because causation was not proven."

Plaintiff argues that defendants' proposed interrogatory was improper because it focused only on the foreseeability component of proximate cause while ignoring the other elements of proximate cause, including defendants' negligent care in failing to prevent a psychotic patient from engaging in impulsive, unpredictable acts.

5

The law governing special interrogatories appears in section 2-1108 of the Code of Civil Procedure:

"Unless the nature of the case requires otherwise, the jury shall render a general verdict. The jury may be required by the court, and must be required on request of any party, to find specially upon any material question or questions of fact submitted to the jury in writing. Special interrogatories shall be tendered, objected to, ruled upon and submitted to the jury as in the case of instructions. Submitting or refusing to submit a question of fact to the jury may be reviewed on appeal, as a ruling on a question of law. When the special finding of fact is inconsistent with the general verdict, the former controls the latter and the court may enter judgment accordingly." 735 ILCS 5/2-1108 (West 2000).

We review a trial court's denial of a request for a special interrogatory *de novo* as a question of law. 735 ILCS 5/2-1108 (West 2004); DiMarco, 278 Ill. App. 3d at 322.

A special interrogatory requires a jury to determine one or more specific issues of ultimate fact. Gasbarra v. St. James Hospital, 85 Ill. App. 3d 32, 38, 406 N.E.2d 544 (1979). A special interrogatory is proper when it concerns the ultimate fact on which the rights of the parties depend. DiMarco, 278 Ill. App. 3d at 322. A special interrogatory serves as a check on the jury's general verdict. Simmons v. Garces, 198 Ill. 2d 541, 555, 763 N.E.2d 720 (2002). "Special findings are inconsistent with a general verdict only where they are 'clearly and absolutely irreconcilable with the general verdict.' " Simmons, 198 Ill. 2d at 555-56, quoting Powell v. State Farm Fire & Casualty Co., 243 Ill. App. 3d 577, 581, 612 N.E.2d 85 (1993). "If

a special interrogatory does not cover all the issues submitted to the jury and a 'reasonable hypothesis' exists that allows the special finding to be construed consistently with the general verdict, they are not 'absolutely irreconcilable' and the special finding will not control." Simmons, 198 Ill. 2d at 556, quoting Powell, 243 Ill. App. 3d at 581.

A trial court can refuse to submit a special interrogatory to a jury only if the form of the interrogatory is improper. Stach v. Sears, Roebuck & Co., 102 Ill. App. 3d 397, 411, 429 N.E.2d 1242 (1981). A special interrogatory is in proper form if it relates to an ultimate issue of fact on which the parties' rights depend and if an answer to the interrogatory would be inconsistent with a general verdict that the jury might return. Simmons, 198 Ill. 2d at 555. The interrogatory need not contain all of the elements of negligence if it focuses on one element that is dispositive of the claim. Simmons, 198 Ill. 2d at 556. Here, the interrogatory focused on the proximate cause of Hooper's death.

Proximate cause is one of three elements a plaintiff must prove to succeed in a negligence action: (1) the defendant owed a duty of care; (2) the defendant breached that duty; and (3) the plaintiff's resulting injury was proximately caused by the breach. Espinoza v. Elgin, Joliet & Eastern Ry. Co., 165 Ill. 2d 107, 114, 649 N.E.2d 1323 (1995). Whether the defendant owed a duty to the plaintiff is a question of law to be decided by the court. Espinoza, 165 Ill. 2d at 114. Whether the defendant breached his duty and whether the breach was the proximate cause of the injury is a factual question for a jury to decide, as long as there is a genuine issue of material fact about breach and causation. Espinoza, 165 Ill. 2d at 114.

A claim of medical malpractice is proven when the plaintiff shows there was a standard

of care by which to measure the defendant's conduct, the defendant negligently breached that standard of care and the defendant's breach was the proximate cause of the plaintiff's injury. Northern Trust Co. v. University of Chicago Hospitals & Clinics, *355 Ill. App. 3d 230, 241, 821 N.E.2d 757 2004* . A plaintiff must prove these elements by presenting medical expert testimony. Northern Trust, *355 Ill. App. 3d at 242.*

Proximate cause is a question of fact to be decided by a jury. Espinoza, 165 Ill. 2d at 114. There are two requirements for a showing of proximate cause: cause in fact and legal cause. Lee v. Chicago Transit Authority, 152 Ill. 2d 432, 455, 605 N.E.2d 493 (1992). See also Knauerhaze v. Nelson, 361 Ill. App. 3d 538, 556, 836 N.E.2d 640 (2005). We are concerned here with legal cause. Legal cause is established if an injury was foreseeable as the type of harm that a reasonable person would expect to see as a likely result of his or her conduct. Lee, 152 Ill. 2d at 455. *Although the foreseeability of an injury will establish legal cause, the extent of the injury or the exact way in which it occurs need not be foreseeable. Knauerhaze*, 361 Ill. App. 3d at 556, citing Colonial Inn Motor Lodge, Inc. v. Gay, 288 Ill. App. 3d 32, 45, 680 N.E.2d 407 (1997). By requiring a legal cause to be attributed to an injury, the law sets limits on how far a defendant's legal responsibility should extend for the actions of the defendant who, in fact, caused the injury. Lee, 152 Ill. 2d at 456. By asking for a special interrogatory on the question of foreseeability, defense counsel here sought an assurance from the jury that it found Hooper's suicide to be the type of injury that a reasonable person would expect to see as a likely result of defendants' conduct.

Neither party has cited, nor have we found, a state case that deals with the specific issue

raised here: whether a jury's negative answer to a special interrogatory on foreseeability would have foreclosed a general verdict of negligence. Defendants cite Kleen v. Homak Manufacturing Co., 321 Ill. App. 3d 639, 643, 749 N.E.2d 26 (2001), for the general rule that where a suicide was not reasonably foreseeable as a likely consequence of the defendant's conduct, then legal cause has not been established. Defendants argue that the federal Seventh Circuit's judgment in Jutzi-Johnson v. United States, 263 F.3d 753, 755-56 7th Cir. 2001 , provides guidance here. While Jutzi-Johnson is not a medical negligence case, the facts parallel those here. There, a prisoner showed abnormal behavior before committing suicide, but the prison staff did not arrange for him to see the jail psychologist. Jutzi-Johnson, 263 F.3d at 755. The district court after a bench trial found in favor of the prisoner s estate and awarded monetary damages. Jutzi-Johnson, 263 F.3d at 754. The appellate court reversed the judgment, concluding that the ultimate question in the case was whether the prisoner s suicide was a foreseeable consequence of the negligence of his jailers in responding ineffectually to his abnormal behavior. Jutzi-Johnson, 263 F.3d at 756. The court found it to be sheer conjecture that an interview with the jail psychologist would have produced sufficient information to have enabled the psychologist to infer that the prisoner was a suicide risk and place him on suicide watch. Jutzi-Johnson, 263 F.3d at 756-57.

We believe the ultimate, controlling question here is whether Hooper s self-destructive behavior was a foreseeable consequence, or legal cause, of defendants negligence in responding ineffectually to her abnormal behavior. As we have shown, foreseeability is the factual finding necessary to establish legal cause. Lee, 152 Ill. 2d at 455.

We see no reason to depart from the rule that foreseeability is the prerequisite for establishing legal

cause. Without foreseeability, legal cause cannot be established. Without legal cause, proximate cause cannot be established. Without proximate cause there can be no negligence. Foreseeability was the only subject of defendants special interrogatory. We believe that the requested interrogatory would have addressed the material issue of ultimate fact on which the rights of the parties depended. A negative answer would have been irreconcilable with the general verdict against defendants. The interrogatory should have been allowed.

Plaintiff relies on Northern Trust, 355 Ill. App. 3d at 256, to argue that a negative answer to the proposed interrogatory would not have been inconsistent with a general verdict against defendants. In Northern Trust, the court found that three proposed special interrogatories were improper in form either because they sought mere findings of evidentiary fact or because neither an affirmative nor a negative answer would have been dispositive of the claim. Northern Trust Co., 355 Ill. App. 3d at 256.

Here, the requested interrogatory was in proper form. It sought the jury s decision on foreseeability, an inquiry necessary to establish proximate cause. An affirmative answer would have established defendants as the legal cause of Hooper s death. A negative answer would have shown that the jury believed defendants were not the legal cause of Hooper s death.

Plaintiff also argues that Winger v. Franciscan Medical Center, 299 Ill. App. 3d 364, 374, 701 N.E.2d 813 (1998), supports the trial court's rejection of defendants' special interrogatory. In Winger, the trial court granted motions for summary judgment by the defendants, a physician and a hospital, who were named in a complaint for damages arising from the suicide of a depressed patient. Winger, 299 Ill. App. 3d at 367. The appellate court reversed, finding

10

there were questions of fact to be decided by a jury: whether the suicide was foreseeable and whether the conduct of the defendants was reasonable under the circumstances.  Winger, 299 Ill. App. 3d at 375.  Plaintiff appears to be arguing that the appellate court in Winger established that the question of whether a defendant's conduct was reasonable under the circumstances, and not only the question of foreseeability, must be determined by the jury and so defendants' special interrogatory on foreseeability would not have disposed of all material issues.  Plaintiff relies on this from the Winger opinion:

> "It is well settled that a hospital and its staff must exercise reasonable care to protect suicidal patients from self-harm.  ***
>
> * * *
>
> ***  Rather than absolve the physician of liability when self-destructive conduct is reasonably foreseeable, the better approach is to require reasonable precautions in light of the special relationship between the physician and his patient.  We find that the proper standard is most ably stated in Cowan v. Doering, 215 N.J. Super. 484, 494-95, 522 A.2d 444, 449-50 1987, aff'd, 111 N.J. 451, 545 A.2d 159 1988  'Where it is reasonably foreseeable that a patient by reason of his mental or emotional illness may attempt to injure himself, those in charge of his care owe a duty to safeguard him from his self-damaging potential. This duty contemplates the reasonably foreseeable occurrence of self-inflicted injury regardless of whether it is the product of the patient's volitional or

11

negligent act.' "  Winger, 299 Ill. App. 3d at 372-74.

We disagree with plaintiff's conclusion that this section of Winger changes the proximate cause analysis in medical negligence cases that involve suicide.  The Winger analysis pertains to the "duty" analysis in a negligence claim, not to a "proximate cause" or "legal cause" analysis. See *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 395, 821 N.E.2d 1099 2004  *the question of foreseeability plays a pivotal role not only in the question of the existence of a duty but also in the determination of legal cause* . The court in Winger addresses foreseeeablity in the context of duty, not proximate cause.  This is supported by the fact that the Winger court repeatedly mentions a caregiver's duty to a patient, but not causation.  Where a patient's self-destructive conduct is reasonably foreseeable, the physician must take reasonable precautions *in light of his special relationship with his patient*.  Winger, 299 Ill. App. 3d at 374. Caregivers have a *duty* to safeguard a self-destructive patient because there is a reasonably foreseeable occurrence of self-inflicted injury.  Winger, 299 Ill. App. 3d at 374, quoting Cowan v. Doering, 215 N.J. Super. 484, 494-95, 522 A.2d 444 (1987).

The conclusion that Winger addresses duty is supported further by the procedural posture of Winger, a summary judgment, which differs from the situation here.  In reviewing an appeal from a summary judgment, the appellate court typically tests the trial court's legal conclusions on the duty aspect of a negligence claim.  See Sandoval v. City of Chicago, 357 Ill. App. 3d 1023, 1027, 830 N.E.2d 722 (2005) ("[w]hether a *duty of care exists is a question of law, appropriately determined by the trial court on a motion for summary judgment* .  Here, factual questions of causation, not legal questions of duty, are the subject of this appeal.  See First Springfield Bank & Trust v.

Galman, 188 Ill. 2d 252, 257, 720 N.E.2d 1068 (1999) (proximate cause is generally an issue for the trier of fact); Tennant v. Clark Equipment Co., 143 Ill. App. 3d 28, 34, 492 N.E.2d 632 (1986) (summary judgment is improper where an issue of material *fact exists about causation and foreseeability* . Since Winger dealt with the duty element of negligence in a summary judgment context, its discussion of foreseeability as it pertains to duty does not control here.

We conclude that defendants' special interrogatory was in the proper form and should not have been refused by the trial court. Defendants were prejudiced because a negative answer to their interrogatory would have been inconsistent with the general verdict against them. A negative answer–that is, that Hooper's self-destructive behavior was not foreseeable–would have controlled and required the court to enter a judgment in defendants' favor.

In a petition for rehearing filed by plaintiff after our disposition of this cause in an unpublished order under Supreme Court Rule 23 (166 Ill. 2d R.23), plaintiff insisted that, based on the testimony of Dr. Kapoor, Dr. Spadoni and Betty Shamley, "there was no question of fact regarding the issue of foreseeability." We have withdrawn that order and now address plaintiff's arguments.

Plaintiff cited seven instances of undisputed pertinent facts that he claims establish that Hooper's suicide was foreseeable: (1) Shamley was concerned that Hooper would act impulsively or unpredictably; (2) Shamley testified it was unclear whether Hooper was suicidal because she could not finish her examination of Hooper; (3) Kapoor ordered a test to determine whether Hooper had suicidal tendencies; (4) One-to-one nursing care was ordered for Hooper to protect her from any type of injury; (5) Spadoni testified that patients like Hooper who suffer

13

from ICU psychosis can be at risk for suicide; (6) Spadoni testified that the reason one-to-one nursing care was ordered was to protect Hooper from injury; and (7) Dr. Kapoor and other experts at trial testified that unpredictable behavior in patients with psychosis includes suicidal behavior. Plaintiff then argued that these facts establish conclusively that Hooper's suicide was reasonably foreseeable by an attending physician.

What is omitted for plaintiff's argument to prevail is that these undisputed, pertinent facts establish *as a matter of law* that Hooper's suicide was foreseeable. While stressing the undisputed facts, plaintiff never argues that such an assembly of factual matter is so conclusive that the question is decided as a matter of law. "*What constitutes the proximate cause of an injury in a particular case is ordinarily a question of fact to be determined from all the attending circumstances, and it can only be a question of law when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them.* Merlo v. Public Service Co. of Northern Illinois, 381 Ill. 300, 318, 45 N.E.2d 665 (1942). Plaintiff does not argue, and we do not believe, that these seven facts could *never* cause differing inferences in the minds of reasonable people.

For these reasons, we reverse the judgment of the circuit court and remand for a new trial.

Reversed and remanded.

BURKE and McBRIDE, JJ., concur.